UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KURT E. PETERSON

                    Plaintiffs,

      -against-                                 1:12-CV-1857 (LEK/CFH)

PAN AM SYSTEMS, INC., *et al.*,

                    Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

This action arises out of an injury *pro se* Plaintiff Kurt E. Peterson ("Plaintiff") suffered while working as a railroad superintendent. See Dkt. No. 5 ("Amended Complaint"). Named as defendants are a variety of entities ("Entity Defendants")[1] and their individual managers ("Individual Defendants")[2] (collectively with the Entity Defendants, "Defendants"). Defendants move to dismiss Plaintiff's claim for negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, to the extent the claim is brought against any of Individual Defendants or any Entity Defendant other than Springfield, which Defendants contend was Plaintiff's sole employer. Dkt. Nos. 14 ("First Motion"); 14-1 ("First Memorandum"); 21 ("Second

---

[1] The Entity Defendants include Pan Am Systems, Inc.; Pan Am Railways; Pan Am Southern; Boston and Maine Corporation; Maine Central Railroad Company ("Maine Central"); and Springfield Terminal Railway Company ("Springfield").

[2] The Individual Defendants include David Fink ("Fink"); David Armstrong Fink ("Armstrong Fink"); James Patterson; James Olson; David A. Nagy ("Nagy"); Ron Cooper; and Deborah Bourassa ("Bourassa").

Motion"); 21-3 ("Second Memorandum").[3] They also seek dismissal of Plaintiff's disability-discrimination claim on a variety of grounds. For the following reasons, Defendants' Motions are granted in part and denied in part.

## II.   BACKGROUND[4]

Plaintiff was employed as "the Superintendent Mechanical Division West" and was responsible for the repair and maintenance of railroad equipment. Am. Compl. at 4-5. In late 2009, Defendants allegedly failed to provide an adequate number of "ice creepers"—over-the-shoe traction devices that maintenance employees were required to wear in icy conditions. Id. at 5-6. Plaintiff was therefore forced to give his ice creepers to a subordinate; as a result, Plaintiff fell and injured himself while inspecting a locomotive. Id. at 6. He filed an accident/incident report with the Entity Defendants, received medical treatment, and continued to work until he got into a car accident, at which point he went on leave to recover from his injuries. Id. at 6-7. Plaintiff's employment was terminated after his Family and Medical Leave Act ("FMLA") leave expired and he was unable to return to work. Id. at 7.

In the Amended Complaint, Plaintiff brings claims for: (1) negligence under FELA; and (2) failure to accommodate and discriminatory termination. See generally Am. Compl. Defendants

---

[3] The First Motion to Dismiss was filed on behalf of all named Defendants except Maine Central. First Mot. at 1. The Second Motion was filed on behalf of Maine Central, which had been inadvertently omitted from the First Motion. See Second Mot. at 1; Dkt. No. 23 ("First Reply") at 1. They are nearly identical in other respects.

[4] Because this matter is before the Court on a motion to dismiss, the allegations of the Amended Complaint are accepted as true. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in reviewing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

2

seek dismissal of both claims against all Defendants except Springfield, arguing that the Amended Complaint is "completely devoid of any allegations of wrongdoing on behalf of any of the named defendants other than S[pringfield]" because all of Plaintiff's claims, "by their very nature," can be asserted against only an employer.[5] Second Mot. at 4. Defendants also seek complete dismissal of the disability claim, on the grounds that Plaintiff has not alleged that he timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), cannot perform the essential functions of his job, and has not alleged that he requested accommodations. Id. at 5-6.

Plaintiff filed Responses to both Motions, each Response consisting of an affidavit detailing his employment relationship with Defendants and extensive supporting documentation. Dkt. Nos. 17, 17-1 ("First Response"); 28 ("Second Response") (collectively, "Responses"). Defendants filed a Reply to each Response, arguing that: (1) the affidavits and documentation could not be considered by the Court in resolving the Motions; and (2) because Plaintiff had "admitted" that he received his paycheck from Springfield, Plaintiff and Defendants were "in agreement" that only Springfield was Plaintiff's employer. First Reply; Dkt. No. 28 ("Second Reply"). Plaintiff subsequently filed a Letter Motion seeking to introduce additional documentary evidence of his employment status, his injury, and its financial consequences. Dkt. No. 31 ("Letter Motion). Defendants objected to the Letter Motion as untimely and unnecessary. Dkt. No. 32 ("Objection"). The Court permitted the filing of the Letter Motion and its attached documentation but reserved deciding whether that documentation would be considered in deciding Defendants' Motions. Dkt. No. 33.

---

[5] In support of their contention that only Springfield was Plaintiff's employer, Defendants attach an Affidavit from Bourassa, the Director of Personnel Administration for Springfield, stating that Plaintiff was employed by Springfield. Dkt. No. 14-2 ("Bourassa Affidavit").

3

**III. DISCUSSION**

**A. Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

However, the allegations of a *pro se* litigant are to be construed under a "less stringent standard[] than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). "A *pro se* plaintiff . . . should be afforded an opportunity fairly freely to amend his complaint." Holmes v. Goldin, 615 F.2d 83, 85

(2d Cir. 1980); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").

**B. FELA**

Only "common carriers by railroad" that are the "employer" of an injured worker are liable under FELA. 45 U.S.C. § 51; see also Schmidt v. Burlington N. & Santa Fe Ry., 605 F.3d 686, 689 (9th Cir. 2010). It is undisputed that the Entity Defendants were common carriers by railroad. See Am. Compl. at 4; First Mem.; Second Mem. The term "common carrier" is statutorily defined to include "*persons* or corporations charged with the duty of the management and operation of the business of a common carrier." 45 U.S.C. § 57 (emphasis added). The plan language of the statute permits individual liability, and Defendants have not pointed to, nor has the Court found, any authority holding otherwise. Plaintiff has alleged that each of the Individual Defendants was involved in the management and control of one or more of the Entity Defendants. See Am. Compl. at 2-4. As it is undisputed that the Entity Defendants were common carriers by railroad, Plaintiff has thus sufficiently alleged that the Individual Defendants were "persons . . . charged with the duty of the management and operation of the business of a common carrier" and therefore constituted common carriers themselves. 45 U.S.C. § 57.

Defendants must also have been Plaintiff's employer to be liable under FELA. "Under FELA, the test of whether a company is the employer of a particular worker turns on the degree of control the company exerts over the physical conduct of the worker in the performance of services." Id. (citing Kelley v. S. Pac. Co., 419 U.S. 318, 324 (1974)). The Supreme Court has held

5

that an employee can have multiple employers under FELA. See Kelley, 419 U.S. at 324.[6]

Rather than being "completely devoid" of any allegations against the non-Springfield Entity Defendants, the Amended Complaint is replete with factual allegations upon which FELA employer status can be found. Plaintiff alleges that all of the Entity Defendants handled his work assignments and provided safety equipment. Am. Compl. at 5. He also alleges that he filled out an accident/injury report form provided by all of the Entity Defendants and returned it to them, that he believed he was "working for" all of the Entity Defendants, and that the Entity Defendants failed to accommodate his disability and terminated him. Id. at 6-7. He further alleges that one or more of the Entity Defendants "extensively use and maintain the railway system" for which Plaintiff was responsible and own the land on which his work was performed. Id. at 5. While Plaintiff has not explicitly stated that each of the Entity Defendants was his "employer" or exercised control over his "physical conduct in the performance of services," his allegations are sufficient to survive a motion to dismiss. See Schmidt, 605 F.3d at 688-91 (finding sufficient evidence of employment under FELA where entity owned railroad cars on which Plaintiff worked, set safety policy governing Plaintiff, provided Plaintiff with gloves and boots, and determined whether Plaintiff could return to work); Torres-Lopez v. May, 111 F.3d 633, 643-44 (9th Cir. 1997) (finding employer-status in non-FELA context based on entity's ownership interest in land on which, and equipment with which, work was performed); Vanskike v. ACF Indus., Inc., 665 F.2d 188, 199 (8th Cir. 1981) ("The belief of an employee as to who is his employer is a fact to be considered in determining whether a master-servant relationship exists."); Kilcullen v. Metro N. Commuter R.R., No. 95 Civ. 6331,

---

[6] Thus, even if the Court were to consider the Bourassa Affidavit and its assertion that Plaintiff was employed by Springfield, the other Defendants could still be Plaintiff's employers under FELA.

1998 WL 26193, at *3-4 (S.D.N.Y. Jan. 26, 1998) (finding sufficient evidence of FELA employer status where plaintiff was injured on locomotive owned by, and received job assignment from, defendant).

The Amended Complaint also explicitly alleges that some of the Individual Defendants exercised control over Plaintiff's work: Fink and Armstrong Fink gave the order that required Plaintiff to perform a railroad-car inventorying tasks, Armstrong Fink and Nagy revised a safety manual that governed Plaintiff's work, and Plaintiff reported his injury to Nagy. Am. Compl at 4-5. While these allegations would not be enough to withstand the Motions with respect to the other Individual Defendants, Plaintiff has, as discussed *supra*, sufficiently alleged that: (1) the Entity Defendants exercised control over his work; and (2) the Individual Defendants managed and controlled the Entity Defendants. He has thus alleged transitive control of his work by all of the Individual Defendants.

Particularly because the existence of an employment relationship under FELA is a factual question that is often unsuitable for resolution even on summary judgment, see Kilcullen, 1998 WL 26193, at *4, and in light of the liberal standard with which *pro se* complaints are to be construed, the Motions, to the extent they seek dismissal of the FELA claim against all non-Springfield Defendants, are denied.[7]

---

[7] Because the FELA allegations of the Amended Complaint are sufficient, the Court need not decide whether to consider the documentation attached to the Responses or the Letter Motion. The Court notes, however, that Plaintiff's acknowledgment that he received his paychecks from Springfield does not constitute an "admission" that only Springfield was his employer. Defendants have cited no authority for the novel proposition that only the entity that issues an employee's paycheck can be an employer under FELA.

**C. Disability-Discrimination Claims**

Plaintiff also brings disability-discrimination claims. See Am. Compl. at 1, 7. Such claims may be brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law ("HRL"), N.Y. EXEC. LAW § 290 *et seq*. See Thomsen v. Stantec, Inc., 483 F. App'x 620, 621 (2d Cir. 2012).

*1. Exhaustion of Administrative Remedies*

"Before an individual may file a complaint in federal court bringing claims pursuant to . . . the ADA, he must exhaust his administrative remedies by timely filing a complaint with the EEOC." Ceslik v. Miller Ford, Inc., 584 F. Supp. 2d 433, 441 (D. Conn. 2008); see also Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). A failure to allege exhaustion of remedies is grounds for dismissal. See Coureau v. Granfield, No. 13-CV-0265, 2013 WL 1831889, at *5 (E.D.N.Y. Apr. 26, 2013); McKnight v. Connecticut, No. 10-CV-147, 2013 WL 321677, at *3 (D. Conn. Jan. 28, 2013). Plaintiff has not alleged exhaustion, and his ADA claim must therefore be dismissed.[8]

However, the HRL does not require exhaustion of administrative remedies. See Lumhoo v. Home Depot USA, Inc., 229 F. Supp. 2d 121, 136 n.13 (E.D.N.Y. 2002) (citing N.Y. EXEC. LAW § 297(9)). Plaintiff's HRL claim is therefore not subject to dismissal on exhaustion grounds.

*2. Performance of Essential Functions and Reasonable Accommodations*

Plaintiff brings two distinct claims under the HRL: discriminatory termination and failure to

---

[8] Because there is no individual liability under the ADA, Plaintiff's ADA claims, to the extent they are brought against the Individual Defendants, are dismissed with prejudice. See Nelson v. City of New York, No. 11 Civ. 2732, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013); Fox v. State Univ. of N.Y., 497 F. Supp. 2d 446, 449-50 (E.D.N.Y. 2007); cf. Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995) (holding that there is no individual liability under Title VII). However, there is individual liability under the HRL. See,e.g, Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 113 (E.D.N.Y. 2011).

8

accommodate. See Am Compl. at 7. To make out a discriminatory-termination claim under the HRL, a plaintiff must show, *inter alia*, that despite her disability, she was otherwise qualified to perform the essential functions of her job. Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008); Graham v. Watertown City Sch. Dist., No. 10-CV-756, 2011 WL 1344149, at *7 (N.D.N.Y. Apr. 8, 2011).[9] Likewise, to make out a failure-to-accommodate claim, a plaintiff must show, *inter alia*, that: (1) with reasonable accommodation, she could perform the essential functions of her position;[10] and (2) the employer refused to make such accommodations. McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013).

Defendants correctly note that the Amended Complaint indicates that Plaintiff was unable to perform the essential functions of his position. See Am. Compl. at 1 (stating that Plaintiff's disability "kept him and continues to keep him from performing his normally assigned duties"); id. at 7 (stating that Plaintiff "cannot work in any capacity due to the pain medications he must take on a daily basis and the disruptive sleep he has now had for years"). And while Plaintiff has conclusorily alleged that Defendants failed to "make accommodations" for him, he has pointed to no accommodations that would have permitted him to perform the essential functions of his position nor to any vacant positions that he could have filled.[11] Id. Plaintiff's HRL claims must therefore be

---

[9] Other than the definition of a disability, HRL disability claims are governed by the same legal standards as ADA claims. Cody v. County of Nassau, 345 F. App'x 717, 719 (2d Cir. 2000). Thus, case law interpreting the ADA is applicable to HRL claims.

[10] Where the reasonable accommodation sought is a transfer to a vacant position, a plaintiff must show that a vacant position existed. See Nixon-Tinkelman v. N.Y.C. Dep't of Health & Mental Hygiene, No. 08 Civ. 4509, 2012 WL 2512017, at *3 (S.D.N.Y. June 28, 2012).

[11] While Defendants argue that Plaintiff's disability claims should also be dismissed because he fails to allege that he requested an accommodation, the Court notes that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled." Brady, 531

9

dismissed. The Court does so without prejudice to allow Plaintiff to remedy these pleading defects.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motions (Dkt. Nos. 14, 21) are **DENIED in part** and **GRANTED in part**; and it is further

**ORDERED**, that the Amended Complaint's (Dkt. No. 5) ADA claims against the Individual Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Amended Complaint's (Dkt. No. 5) ADA claims against the Entity Defendants are **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Amended Complaint's (Dkt. No. 5) HRL claims against all Defendants are **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:     August 28, 2013
           Albany, NY

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge

---

F.3d at 135. This obviousness might well be found given Plaintiff's allegations that he communicated with Defendants regarding the severity of his injury and his work limitations.