UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Kurt E. Peterson,

                     Plaintiff,

    -against-

                                      **Civil Case No. 1:12-CV-1857**
                                      **(LEK/CFH)**

PAN AM RAILWAYS, INC., and SPRINGFIELD
TERMINAL RAILWAY COMPANY,

                     Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO PRECLUDE

---

                         CARTER, CONBOY, CASE, BLACKMORE,
                              MALONEY & LAIRD, P.C.
                         Attorneys for Defendants
                         Office and P.O. Address
                         20 Corporate Woods Boulevard
                         Albany, NY  12211-2362
                         Phone:  (518) 465-3484
                         E-Mail: jhansen@carterconboy.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
      STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT
      POINT I
            THE CREDIBILITY OF THE PLAINTIFF IS A CRUCIAL ISSUE IN AN
            UNWITNESSED ACCIDENT THAT MUST BE DETERMINED BY A
            JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      POINT II
            THERE ARE QUESTIONS OF FACT REGARDING WHETHER THE
            DEFENDANT NEGLIGENTLY FAILED TO PROVIDE THE PLAINTIFF WITH
            ICE CREEPERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      POINT III
            THERE ARE QUESTIONS OF FACT REGARDING WHETHER THE
            PLAINTIFF'S INJURIES WERE CAUSED BY HIS SUPPOSED FALL IN
            DECEMBER 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE

      POINT I
            PRECLUSION OF EVIDENCE IS NOT WARRANTED . . . . . . . . . . . . 11

A)     Defense counsel has acted in good faith throughout this litigation . . . . . . . . . 11

B)     The evidence to be precluded is critically important to the defendant . . . . . . . 12

C)     The plaintiff has not been prejudiced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      POINT II
            THE COURT SHOULD IMPOSE MONETARY SANCTIONS ON THE
            PLAINTIFF AND/OR HIS COUNSEL IN ACCORDANCE WITH FRCP
            37(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITY

A.V.E.L.A., Inc. v. Estate of Monroe, 2014 U.S. Dist. LEXIS 25385, *17 (S.D.N.Y. Feb. 24, 2014) *quoting* Izzo v. ING Life Insurance & Annuity Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Boyd v. Home Depot, Inc., 2013 U.S. Dist. LEXIS 10185, *6 (D.Co. Jan. 25, 2013) *citing* Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994) and Stevens v. Bangor & Aroostook R. Co., 97 F.3d 594, 598 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 6

Fanning v. Target Corp., 2006 U.S. Dist. LEXIS 4804, *6 (S.D.N.Y. Feb. 6, 2006) . . 12

Hurley v. Patapsco & B.R.R. Co., 888 F.2d 327, 330 (4th Cir. 1989) . . . . . . . . . . . . 7

Jones v. BNSF Railway Co., 2012 U.S. Dist. LEXIS 602, *6 (W.D.Wa. Jan. 4, 2012) *quoting* Ellis v. Union Pacific Ry. Co., 329 U.S. 649, 653 (1947) . . . . . . . . . . . . . . . 6

Jones v. BNSF Railway Co., 2012 U.S. Dist. LEXIS 602, *6 (W.D.Wa. Jan. 4, 2012) *citing* Urie v. Thompson, 337 U.S. 163, 182 (1949) . . . . . . . . . . . . . . . . . . . . . . . . 7

Kam Hing Enterprises, Inc. v. Wal-Mart Stores, Inc., 359 F. App'x 235, 237 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Mitchell v. Sun Drilling Products, Inc., 1996 U.S. Dist. LEXIS 10703, *5 (E.D.La. July 22, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of defendants, Pan Am Railways, Inc. and Springfield Terminal Railway Company (hereinafter collectively referred to as "PAR"), in opposition to the plaintiff's motion for summary judgment and motion to preclude.

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF FACTS

A comprehensive recitation of material facts is contained in PAR's Counterstatement of Material Facts Pursuant to Local Rule 7.1, accompanying these papers. Additionally, contained therein is PAR's Response to Plaintiff's Rule 7.1. Statement of Material Facts, which demonstrates that the "facts" relied upon by the plaintiff in support of his motion for summary judgment are far from undisputed, and many of them are greatly in doubt.

## LEGAL STANDARD

"Summary judgment is appropriate only where there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003). "Under this standard, a fact is 'material' if it might affect the outcome of the suit under the governing law." Id. "A fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When "multiple interpretations of the evidence are possible, there are questions that must appropriately be put to a jury" and summary judgment should be denied. Id. at 50.

1

## ARGUMENT

The plaintiff is a chronic liar. He claims that PAR did not have ice creepers in stock in late 2009, but they did. (D. L.R. 7.1. St., ¶ 83). He claims that he properly submitted a Material Requisition for ice creepers in October 2009, but he did not. (D. L.R. 7.1. St., ¶¶47-51). He claims he sent "numerous emails" to the corporate office prior to the date of the accident communicating his need for ice creepers, but there are none in the record. He claims that the situation regarding ice creepers in the fall of 2009 was a "hot mess", but contrarily admits that *every other employee* in his division had them on the date of the alleged accident. (D. L.R. 7.1. St., ¶ 70).

Plaintiff makes the uncorroborated claim that, mere days before the alleged incident, he gave away his ice creepers to another employee, but once again there is nothing in the record to support this. (D. L.R. 7.1. St., ¶¶65-66). Plaintiff also admits that, despite "many times" in the past purchasing items that he needed from a local store using PAR's petty cash, he made no effort to purchase ice creepers prior to going out in the field on December 18, 2009. (D. L.R. 7.1. St., ¶¶62, 72). Moreover, despite there being 35-40 sets of ice creepers available at the East Deerfield Engine House on December 18, 2009, plaintiff admits that he made no effort to obtain one of these sets prior to going out into the field on that day. (D. L.R. 7.1. St., ¶¶69, 71).

Rather, the plaintiff's entire case on liability is that – as the Superintendent of Mechanical West, responsible for administering PAR's safety policies and procedures at East Deerfield (D. L.R. 7.1. St., ¶¶37, 38) – he performed work in icy conditions without the proper safety equipment, without notifying anyone that he did not have the proper safety equipment, and without making any effort to secure the proper safety equipment. This

2

allegedly resulted in an unwitnessed fall, for which it is claimed that PAR was somehow negligent for the plaintiff's failure to utilize the proper safety equipment (ice creepers).

The plaintiff's uncorroborated story regarding an unwitnessed fall without ice creepers becomes even harder to believe when considering that he had a severe pre-existing back injury which had him "close to" the end of his rope mere months prior to the complained-of incident. (D. L.R. 7.1. St., ¶32). Further, the plaintiff did not tell any of his colleagues or superiors about his supposed fall until days later, at which time he did not state that he was injured. (D. L.R. 7.1. St., ¶¶74-76). He never called the Operations Manager to report the incident, as is required by PAR's safety policy. (D. L.R. 7.1. St., ¶¶77-79). In fact, PAR did not receive the plaintiff's incident report until *three months later*, when he mailed it in and claimed that it had been faxed on December 19, 2009, despite it never being received. (D. L.R. 7.1. St., ¶¶80, 90).

Moreover, the plaintiff did not seek medical attention nor miss any work for more than one month after this purported accident occurred on December 18, 2009. (D. L.R. 7.1. St., ¶¶84-85). It was only after the plaintiff reported for duty under the influence of narcotics a month later and got into a motor vehicle accident on the way to work that he finally sought medical attention and filed for disability leave. (D. L.R. 7.1. St., ¶¶86-88). It was only at this time that the plaintiff realized the need to conjure up a way in which to blame PAR for his medical problems, which began long before the alleged events of December 18, 2009. (D. L.R. 7.1. St., ¶¶27-34).

Lastly, and most remarkably, the plaintiff admitted at his deposition that he had fabricated a back injury at the hands of his neighbor in July 2010 in order to assist him in litigation against that neighbor. (D. L.R. 7.1. St., ¶¶91-92). Yet he now claims that his

3

story about how this purported incident occurred should be believed, despite the mountain

of evidence to the contrary.

Under these extraordinary circumstances, the jury must be allowed to assess the

plaintiff's credibility in determining whether PAR violated FELA and, indeed, whether the

plaintiff's alleged unwitnessed accident actually ever happened at all, or whether it was

simply another lie told by the plaintiff for the benefit of litigation.

Accordingly, the plaintiff's motion for summary judgment must be denied.

## POINT I

### THE CREDIBILITY OF THE PLAINTIFF IS A CRUCIAL ISSUE IN AN UNWITNESSED ACCIDENT THAT MUST BE DETERMINED BY A JURY

As set forth in detail above and in the accompanying Counterstatement of Material

Facts, the plaintiff's credibility is highly doubtful.  There are a lot of disputed facts in this

case regarding, for example: (1) whether PAR had ice creepers in stock in late 2009; (2)

whether the plaintiff requested ice creepers in the proper manner and/or through the proper

channels; (3) whether the plaintiff reported his alleged fall in the proper manner and/or

through the proper channels; and (4) whether the plaintiff's claimed injuries were caused

by an alleged fall in December 2009 as opposed to pre-existing conditions and/or his

involvement in subsequent incidents/altercations (such as being assaulted by his neighbor

in July 2010).

However, because the plaintiff's fall was unwitnessed, the only direct evidence that

the plaintiff actually fell on December 18, 2009 comes from his own testimony.  Similarly,

the only direct evidence of whether the plaintiff was or was not wearing ice creepers on

4

December 18, 2009 comes from his own testimony.  Under such circumstances, the jury must be allowed to assess the credibility of the plaintiff and decide whether plaintiff's story regarding the accident is believable.  This is especially true given the plaintiff's serious credibility problems, as detailed above, and the ample circumstantial evidence to suggest that the plaintiff is not telling the truth.[1]

In an unwitnessed accident, the credibility of the plaintiff is "crucial".  See Mitchell v. Sun Drilling Products, Inc., 1996 U.S. Dist. LEXIS 10703, *5 (E.D.La. July 22, 1996). Indeed, New York's Pattern Jury Instruction 1:91, entitled "General Instructions–Interested Witnesses–Generally", provides the following:

> "The plaintiff and the defendant both testified before you.  As parties to this action, both are interested witnesses. . . . It is for you to decide from the demeanor of the witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his interest. *You may, if you consider it proper under all of the circumstances, not believe the testimony of such a witness,* **even though it is not otherwise challenged or contradicted.**"

(Emphasis added).

In other words, the jury must be permitted to decide whether this unwitnessed accident happened in the manner testified to by the plaintiff, or even whether it happened at all.  There is ample circumstantial evidence to suggest that the fall either did not happen at all, or did not happen in the manner plaintiff claims.  There is also ample evidence to suggest that the plaintiff is not a credible witness.  If the Court grants the plaintiff's motion for summary judgment, it would be ruling that the plaintiff was injured by the defendant's

---

[1]The Court is respectfully referred to the "Argument" section of this Memorandum, *supra*, which sets forth in detail and provides record support for the doubtful credibility of the plaintiff, and the circumstantial evidence demonstrating that the accident did not occur in the manner he claims.

negligence, as a matter of law.  To do so, the Court would necessarily have to assume the

truth of the plaintiff's testimony regarding how the accident happened, or even that it

happened at all.  It is respectfully submitted that the credibility of the plaintiff in this regard

is a crucial jury question and that all inferences must be resolved in favor of the non-

moving party.  As such, the plaintiff's motion for summary judgment must be denied.

**POINT II**

**THERE ARE QUESTIONS OF FACT
REGARDING WHETHER THE DEFENDANT
NEGLIGENTLY FAILED TO PROVIDE THE
PLAINTIFF WITH ICE CREEPERS**

As set forth above (Point I, *supra*), the plaintiff's motion should be denied because

a jury must determine whether the plaintiff's story regarding the happening of this

unwitnessed accident is to be believed.  However, even assuming *arguendo* that the

plaintiff's accident occurred in the manner that he claims, the motion must still be denied

because there are questions of fact regarding whether such accident was caused in any

respect by the negligence of PAR.

"FELA 'is not an insurance statute.'  The basis of liability 'is . . . negligence, not the

fact that injuries occur.'"  Jones v. BNSF Railway Co., 2012 U.S. Dist. LEXIS 602, *6

(W.D.Wa. Jan. 4, 2012) *quoting* Ellis v. Union Pacific Ry. Co., 329 U.S. 649, 653 (1947).

"A plaintiff may not recover simply because he was injured in the course of his employment

on the railroad.  Likewise, a plaintiff may not recover simply because of conditions he

encountered as part of his job requirements."  Id. *citing* Consol. Rail Corp. v. Gottshall, 512

U.S. 532, 543 (1994) and Stevens v. Bangor & Aroostook R. Co., 97 F.3d 594, 598 (1st Cir.

1996).  Thus, "a FELA plaintiff bears the burden of proving the existence of a duty owed

6

by the defendant, a breach of that duty, causation, and damage." Jones, *supra* at \*8.

Under FELA, "a railroad has a duty to use ordinary care to protect employees from known dangers". Jones v. BNSF Railway Co., 2012 U.S. Dist. LEXIS 602, \*6 (W.D.Wa. Jan. 4, 2012) *citing* Urie v. Thompson, 337 U.S. 163, 182 (1949). The railroad breaches this duty only "if it knew or should have known that it was not acting adequately to protect its employees." Id. *citing* Urie, *supra*.

"When an employee's own negligence is the sole proximate cause of his injuries, the employer cannot be found liable pursuant to FELA." Hurley v. Patapsco & B.R.R. Co., 888 F.2d 327, 330 (4th Cir. 1989).

Here, the plaintiff claims that PAR violated FELA because it failed to provide him with ice creepers, resulting in his alleged fall on ice. However, it is undisputed that it was plaintiff himself who was ultimately responsible for administering PAR's safety policy at East Deerfield. (D. L.R. 7.1. St., ¶38). It is also undisputed that it was the plaintiff who was ultimately responsible for ensuring that the East Deerfield employees (including the plaintiff himself) had the proper safety equipment, including ice creepers. (D. L.R. 7.1. St., ¶39, 43). Indeed, the plaintiff admitted that, as Superintendent of Mechanical West, he was the "head guy" at the East Deerfield Engine House. (D's Resp. to Pl's 7.1. St., ¶17).

In other words, PAR could not have known and should not have known that the plaintiff allegedly needed ice creepers unless and until the plaintiff effectively and properly communicated that need. But he never did. The plaintiff did not submit a Material Requisition for ice creepers containing the proper approvals, so the supposed Requisition was never processed. (D. L.R. 7.1. St., ¶¶48-51). In fact, PAR has no record of ever

7

receiving that Requisition.[2] (D. L.R. 7.1. St., ¶). Rather, once again, it is only the plaintiff's uncorroborated, after-the-fact testimony which (tenuously) supports his claim that he ever submitted it at all.[3]   Further, plaintiff testified that he sent "numerous emails" to the corporate office prior to December 18, 2009 regarding his need for ice creepers, but the record is devoid of a single one.  This is despite plaintiff's testimony that he would have made this type of request in writing, because "documentation was key", and that he would have printed out and maintained copies of such correspondence.  (D. L.R. 7.1. St., ¶¶52-54).

Plaintiff also claims that ice creepers were not in stock, but they were.  (D. L.R. 7.1. St., ¶83).  Nonetheless, it is undisputed that he – and his whole crew at East Deerfield – had ice creepers up until *mere days* prior to the alleged accident.  (D. L.R. 7.1. St., ¶¶69-70).  Mere days before the alleged incident, the plaintiff claims that he "gave away" his ice creepers, but there is no record evidence to indicate that he notified anyone of this prior to the alleged fall.  (D. L.R. 7.1. St., ¶¶65-66).

When asked to work out in the field on December 18, 2009, plaintiff never communicated that he did not have the proper safety equipment to do the job, nor did he make any effort to secure the proper safety equipment from a fellow employee or local

---

[2]A jury could very well decide that the plaintiff never submitted this Requisition at all. Plaintiff only produced it after this litigation began, just as he only produced an incident report months after he went out on disability.  That PAR has no record of receiving either of these documents in 2009 is an interesting coincidence to say the least.

[3]Plaintiff claims that he notified Dave Ropple of his need for ice creepers, but also admitted that Dave Ropple was not involved with the processing of Material Requisitions, nor in the position to obtain safety equipment for him.  (D's Resp. to Pl's 7.1. St., ¶18).  It was the plaintiff's sole responsibility to communicate his supply needs in the proper manner and through the proper channels.  (D's Resp. to Pl's 7.1. St., ¶17).

store.   (D. L.R. 7.1. St., ¶¶68-72).   Any evidence of these things would lend some substantiation to the plaintiff's claim that he did not have ice creepers and that he properly communicated that need.   But his claims in this regard remain unsubstantiated and uncorroborated by any other evidence in the record.

Yet again, the only support for the plaintiff's story is his own testimony.   There is not a single document to support the plaintiff's claims that ice creepers were out of stock, nor that he properly submitted his Material Requisition, nor that he communicated with anyone about the fact that he allegedly needed ice creepers until after his fall occurred.

As such, it cannot be said as a matter of law that PAR knew or should have known the plaintiff needed ice creepers.   There is ample evidence to suggest that PAR was never notified of the plaintiff's alleged need until after the alleged incident occurred.   As Superintendent of Mechanical West, it was the plaintiff's job to ensure that employees at East Deerfield had the necessary safety equipment, and to ensure that the equipment needed was properly ordered and obtained.   Accordingly, based on all of the above, a jury could conclude that – even if it is believed that the plaintiff fell without ice creepers on December 18, 2009[4] – the plaintiff's actions were the sole proximate cause of his injuries.

Thus, the plaintiff's motion for summary judgment must be denied.

## POINT III

**THERE ARE QUESTIONS OF FACT REGARDING WHETHER THE PLAINTIFF'S INJURIES WERE CAUSED BY HIS SUPPOSED FALL IN DECEMBER 2009**

As stated above, to establish entitlement to summary judgment under FELA, a

---

[4]Which is in doubt. *See* Point I, *supra.*

plaintiff must demonstrate undisputedly that, *inter alia*, his claimed injuries were caused by the negligence of his employer. Jones, *supra* at *8 (causation and damage are elements of a FELA claim that must be proved by the plaintiff).

Here, the plaintiff's alleged fall was unwitnessed, and a jury must weigh the credibility of the plaintiff's story regarding its occurrence. *See* Point I, *supra*. Relatedly, the plaintiff cannot establish as a matter of law that he suffered an injury on December 18, 2009. As more fully set forth in the accompanying Affidavit of Dr. Brian Gordon, there is no objective evidence that the plaintiff suffered an injury to his back or right hip on December 18, 2009. *See* Gordon Affidavit, at ¶12. Rather, the plaintiff had significant degenerative conditions in both his back and right hip prior to December 18, 2009, and there is no objective evidence that those conditions were made worse on December 18, 2009. *See generally* Gordon Affidavit.

The record demonstrates that the plaintiff did not miss work nor seek medical attention for more than one month after the subject accident. (D. L.R. 7.1. St., ¶¶84-85). The plaintiff admitted that it was not until he got into a motor vehicle accident on January 21, 2010, after reporting for work under the influence of narcotics, that he finally sought medical attention and filed a disability claim with his employer. (D. L.R. 7.1. St., ¶¶86-88). The record also demonstrates that immediately prior to the alleged incident, the plaintiff was in severe pain due to pre-existing degenerative conditions such that he was "close to" the end of his rope. (D. L.R. 7.1. St., ¶¶27-34).

It was only after his world was crashing down around him and his job was in jeopardy for coming to work under the influence of drugs that there suddenly surfaced claims by the plaintiff that he was injured in a workplace accident one month earlier. Under

10

these circumstances, a jury must be permitted to hear the plaintiff's testimony regarding

the happening of the accident and assess his credibility regarding (a) whether the accident

actually happened and, if so (b) whether he was injured as a result of it.

Until a jury weighs in on these issues, it cannot be said that causation has been

established by the plaintiff, so summary judgment must be denied.

## OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE

### POINT I

### PRECLUSION OF EVIDENCE IS NOT WARRANTED

"Generally, preclusion is viewed as a harsh sanction that 'should be imposed only

in rare situations.'" A.V.E.L.A., Inc. v. Estate of Monroe, 2014 U.S. Dist. LEXIS 25385, *17

(S.D.N.Y. Feb. 24, 2014) quoting Izzo v. ING Life Insurance & Annuity Co., 235 F.R.D. 177,

186 (E.D.N.Y. 2005). In evaluating a request for preclusion, the Court should consider (1)

the party's explanation for the discovery delay; (2) the importance of the evidence to be

precluded; (3) prejudice to the moving party; and (4) feasibility of a continuance. See Kam

Hing Enterprises, Inc. v. Wal-Mart Stores, Inc., 359 F. App'x 235, 237 (2d Cir. 2010).

These factors are discussed separately below. None of them favor the plaintiff's

motion for preclusion.

**A)      Defense counsel has acted in good faith throughout this litigation.**

As set forth in detail in the accompanying Affidavit of Attorney Hansen, defense

counsel has acted diligently and in good faith throughout this litigation in an effort to

complete discovery in a timely manner. Numerous delays that were not the defendants'

fault have presented themselves during the course of this litigation, which explains why all discovery was not completed by the deadline.  Further, because there had already been two continuances (both requested by the plaintiff), defendants endeavored to complete discovery without requesting a third.

**B)     The evidence to be precluded is critically important to the defendant.**

The plaintiff seeks to preclude the defense medical expert from testifying at trial. If such an application were successful, the entire defense on causation and damages would be eviscerated.  This extreme sanction is simply not warranted in a situation like this, where Dr. Gordon was timely disclosed to the plaintiff, and when numerous delays that were not the fault of the defendants resulted in Dr. Gordon's report being disclosed shortly after the deadline for discovery.

**C)     The plaintiff has not been prejudiced.**

When a party has an opportunity to depose a witness during discovery but chooses not to, it cannot later claim prejudice based on the lack of such deposition.  *See* Fanning v. Target Corp., 2006 U.S. Dist. LEXIS 4804, *6 (S.D.N.Y. Feb. 6, 2006).

In *Fanning*, the defendant was made aware of two treating physicians during discovery but made no effort to depose them.  Plaintiff did not serve an expert disclosure. After the close of discovery, the defendant moved to preclude the treating physicians from testifying at trial arguing that, among other things, because these witnesses were not disclosed as experts, defendant was denied the opportunity to depose them.

The District Court denied the motion to preclude, holding that the defendant was not prejudiced, because it was aware of these treating physicians and could have deposed

12

them, notwithstanding the plaintiff's failure to disclose them as experts.  Id.

Here, as described in detail in the accompanying Affidavit of Jonathan E. Hansen, Esq., Dr. Gordon was timely disclosed to the plaintiff as the defense expert in May 2014. Plaintiff chose not to pursue a deposition of Dr. Gordon at that time, and cannot now claim prejudice based on the lack of such deposition.

**D)      Even if the plaintiff were prejudiced, it can be easily cured by a continuance.**

To the extent that there is any prejudice here, it is easily cured by a brief continuance of discovery (a separate motion for which is currently pending before Magistrate Judge Hummel and returnable on October 31, 2014).  The trial has been adjourned without date in light of the plaintiff's pending motion for summary judgment, and the plaintiff has ample time to depose Dr. Gordon (even though he previously expressed no intent to).  Indeed, defense counsel consented to the deposition of Dr. Gordon even prior to the adjournment of the trial, but plaintiff chose to make his motion to preclude instead.  *See* Hansen Affidavit.

As such, none of the factors that the Court should consider in weighing a request for preclusion favor such an extreme sanction here.  Preclusion is plainly not warranted.

## POINT II

### THE COURT SHOULD IMPOSE MONETARY SANCTIONS ON THE PLAINTIFF AND/OR HIS COUNSEL IN ACCORDANCE WITH FRCP 37(a)(4)(B)

FRCP 37(a)(4)(B) provides in relevant part, that if a discovery motion is denied, "the court may . . . require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred

13

in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified . . . ."

Here, the plaintiff was not substantially justified in making a motion to preclude the defense expert from testifying at trial. As set forth above and in the accompanying Affidavit of Attorney Hansen, none of the factors to be considered by the Court in assessing a request for preclusion are present here. Most egregiously, plaintiff has not even arguably made a showing of prejudice, which is a required showing on a motion for preclusion.

Indeed, in assessing a motion to preclude a court "must consider": (1) prejudice; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the non-moving party's bad faith or wilfulness. *See* Boyd v. Home Depot, Inc., 2013 U.S. Dist. LEXIS 10185, *6 (D.Co. Jan. 25, 2013) *citing* Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

Especially now that the trial date has been adjourned without date, any claim of prejudice to the plaintiff is completely baseless. Moreover, in light of the detailed procedural history set forth in Attorney Hansen's Affidavit, any insinuation that the defendants acted in bad faith is also frivolous.

Plaintiff did not cite to a single case in his motion papers demonstrating that preclusion is warranted absent prejudice, and even after being urged to withdraw the motion after the trial was adjourned without date, plaintiff refused to do so.

As such, defendants request the imposition of monetary sanctions against the plaintiff and/or his counsel in accordance with FRCP 37(a)(4)(B), and further request the opportunity to provide the Court with proof of its expenses associated with opposing this meritless motion to preclude.

14

## CONCLUSION

Based on the foregoing, defendants respectfully request an Order denying the plaintiff's motion for summary judgment and motion to preclude, with prejudice and on the merits, and imposing monetary sanctions on the plaintiff and/or his counsel in accordance with FRCP 37(a)(4)(B), along with such other and further relief as the Court deems just and proper.

DATED: September 30, 2014          CARTER, CONBOY, CASE, BLACKMORE,
MALONEY & LAIRD, P.C.

By _____
JONATHAN E. HANSEN
Bar Roll No.: 514951
Attorneys for Defendants
Office and P.O. Address
20 Corporate Woods Boulevard
Albany, NY  12211-2362
Phone:  (518) 465-3484
E-Mail: jhansen@carterconboy.com

15